UNITED STATES of America, Plaintiff–Appellee,

v.

THE BAYLOR UNIVERSITY MEDICAL CENTER, Brigham and Women's Hospital, Cedars–Sinai Medical Center, Cleveland Clinic, Crawford Long Hospital of Emory University, Deaconess Medical Center, Duke University Health System, Inc., Emory University Hospital, Florida Hospital Medical Center, Foster G. McGraw Hospital, Good Samaritan Hospital and Medical Center, Harper Hospital, Hospital of the Good Samaritan, Hospital of the University of Pennsylvania, Jewish Hospital of St. Louis, Johns Hopkins Hospital, Lahey Clinic Hospital, Inc., Loma Linda University Medical Center, Massachusetts General Hospital, The Methodist Hospital, Methodist Hospital, Lubbock, Texas, Methodist Hospital of Indiana, Methodist Hospital of Memphis, Montefiore Medical Center of Pennsylvania, Northwestern Memorial Hospital, Providence Medical Center, Sacred Heart Medical Center, St. Francis Hospital, Roslyn, St. Joseph's Hospital of Atlanta, St. Joseph Mercy Hospital, St. Louis University Hospital, St. Luke's Medical Center, Inc., St.

Thomas Hospital, St. Vincent Hospital and Health Care Center, St. Vincent Hospital and Medical Center, Sentara Norfolk General Hospital, Sequoia Hospital District, Seton Medical Center, Stanford University Hospital, University Hospital of Cleveland, Washington Hospital Center, William Beaumont Hospital, Yale–New Haven Hospital, Aurora Sinai Medical Center f/k/a Sinai Samaritan Medical Center, Defendants–Appellants.

Docket No. 05–2951–cv.

United States Court of Appeals, Second Circuit.

Argued: Feb. 6, 2006.

Decided: Nov. 16, 2006.

Ira Feinberg, Stephen J. Immelt, Therese M. Goldsmith, Hogan & Hartson L.L.P., Baltimore, MD; Lorane F. Hebert, Dirk C. Phillips, Hogan & Hartson L.L.P., Washington, DC, for Defendants–Appellants Crawford Long Hospital of Emory University, Emory University Hospital,

Massachusetts General Hospital, The Brigham and Women's Hospital, Inc., Hospital of the University of Pennsylvania, Presbyterian Medical Center of the University of Pennsylvania Health System, The Johns Hopkins Hospital.

Frederick Robinson, Caroline M. Mew, Fulbright & Jaworski, L.L.P., Washington, DC, for Defendant–Appellant Duke University Health System, Inc.

Gates Garrity–Rokous, Wiggin and Dana L.L.P., New Haven, CT, for Defendant–Appellant Foster G. McGaw Hospital.

Ray M. Shepard, Leonard C. Homer, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Appellants–Defendants Cedars–Sinai Medical Center, Loma Linda University Medical Center, Northwestern Memorial Hospital, Yale–New Haven Hospital, St. Francis Hospital, Roslyn, St. Joseph's Hospital of Atlanta, Inc., St. Joseph Mercy Hospital, Washington Hospital Center, Florida Hospital Medical Center.

Eric D. Miller, Douglas N. Letter, United States Department of Justice, Civil Division, Washington, DC (Peter D. Keisler, Assistant Attorney General, Kevin J. O'Connor, United States Attorney, on the brief), for Plaintiff–Appellee.

Mark H. Gallant, Cozen O'Connor, Philadelphia, PA, for Amici Curiae American Hospital Association (Maureen D. Mudron, on the brief), Association of American Medical Colleges (Ivy Baer, on the brief).

Before JACOBS, Chief Judge, POOLER and GIBSON,* Circuit Judges.

JACOBS, Chief Judge.

Under the scheme established by the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, a private citizen (a "relator") may commence a *qui tam* action by filing under seal a complaint in the government's name alleging fraud on the government. *See id.* § 3730(b). If the government elects to intervene and recovers a judgment, the relator gets a percentage. *See id.* § 3730(d)(1). If the government declines to intervene, the relator may pursue the action in his own name (and may get a larger percentage). *See id.* § 3730(d)(2). The appellant hospitals (the "Hospitals") are the defendants in a multidistrict litigation in which the United States Government ("Government") filed complaints-in-intervention asserting, *inter alia,* claims under the FCA. The claims accrued over the period 1986 to 1995; the relator in this case filed his *qui tam* complaint in 1994; and the Government intervened beginning in 2002. The Hospitals take this interlocutory appeal from a judgment of the United States District Court for the District of Connecticut (Goettel, *J.*) dismissing all claims except those under the FCA. We reverse the district court's judgment to the extent that we remand to the district court with instructions that the Government's FCA claims be dismissed as well because they are time-barred.

**I**

In March 1994, Kevin Cosens filed a *qui tam* complaint (the "original complaint") in the United States District Court for the Western District of Washington against 132 hospitals from thirty states; the complaint also named thirty "John Doe" defendants. As required by the FCA, the original complaint was filed under seal and served on the Government. *See* 31 U.S.C. § 3730(b)(2). The original complaint alleged, *inter alia,* that the Hospitals had defrauded Medicare by seeking and obtaining reimbursement for hospital services provided to patients participating in clinical trials involving investigational cardiac devices that had not received Food and Drug Administration ("FDA") pre-

* The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

market approval.[1] According to the complaint, reimbursement for such services contravened a provision in the manuals that Medicare issued to its fiscal intermediaries (the "Manual Provision").[2] In December 1995, Cosens filed an amended complaint, also under seal.[3] The original and amended pleadings both alleged a single omnibus cause of action; neither pleading linked individual hospitals to specific fraudulent acts or alleged that the individual hospitals had conspired or collaborated in perpetrating the fraud.

Upon receiving service of the original complaint, the Government had an initial sixty days to investigate the allegations and determine whether to intervene while the complaint remained under seal. *See* 31 U.S.C. §§ 3730(b)(2), (4). Over the next eight years, the Government made sixteen requests, on *ex parte* motion, *see* 31 U.S.C. § 3730(b)(3), to extend the sixty-day period during which the complaint remained under seal. The Western District of Washington granted each motion.

Beginning in 1995, a series of external events transpired that had bearing on the course of the litigation: (i) In May 1995, twenty-five of the hospitals filed suit in the Central District of California, seeking to have the Manual Provision declared invalid, *see Cedars–Sinai Med. Ctr. v. Shalala*, 939 F.Supp. 1457 (C.D.Cal.1996), *aff'd in part and remanded in part*, 125 F.3d 765 (9th Cir.1997), *appeal after remand*, 177 F.3d 1126 (9th Cir.1999) (the "*Cedars–Sinai* litigation");[4] (ii) In Sep-

tember 1995, the Secretary of the Department of Health and Human Services ("HHS") promulgated new regulations governing the investigational cardiac devices at issue in Cosens's *qui tam* action, *see* Medicare Program; Criteria and Procedures for Extending Coverage to Certain Devices and Related Services, 60 Fed. Reg. 48417 (codified at 42 C.F.R. §§ 405 & 411); under the new regulations, Medicare arguably covered treatments involving those devices; (iii) In February 1996, the United States Permanent Subcommittee on Investigations held hearings (at which Cosens testified) to investigate whether hospitals were defrauding Medicare by billing for services involving non-covered devices, *see Improper Medicare Billing by Hospitals Nationwide for Investigational Devices and Procedures: Hearing Before the Perm. Subcomm. On Investigations of the Comm. On Gov't Affairs*, 104th Cong. 32 (1996), available at 1996 WL 713556–7135563; *see also In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 325 (D.Conn.2004). The Government's motions to extend the seal period cited these developments, as well as the need to evaluate the claims and pursue settlement discussions with the hospitals. *See Cardiac Devices Qui Tam Litig.*, 221 F.R.D. at 325–26. During this period, the Government and Cosens sought and obtained a partial lifting of the seal, with the result that some of the hospitals received limited information about the FCA suits.

Beginning in June 1999, the Government—asserting that it was the real party

---

1. The regulatory details and history at issue here are recounted in the opinion in *Yale–New Haven v. Leavitt*, 2006 WL 3317691, which is being issued in tandem with this opinion.

2. Fiscal intermediaries are private entities, usually insurance companies, that contract with Medicare to pay Medicare reimbursement claims, *see* 42 U.S.C. § 1395h.

3. The amended complaint added two hospitals as defendants, but otherwise did not materially change the original complaint.

4. The *Cedars–Sinai* litigation is discussed in greater detail in *Yale–New Haven Hosp. v. Leavitt*, 2006 WL 3317691.

in interest without formal intervention—filed *ex parte* motions for severance and transfer of venue as to particular hospitals, in each instance seeking transfer to the district where the hospital was located. These motions were all granted by the Western District of Washington. *See id.* at 326. At the same time, the Government negotiated settlements with a number of the hospitals, and voluntarily dismissed others.

In late 2002 to early 2003, the Government at last filed complaints-in-intervention against the remaining defendants *(i.e.,* the Hospitals), asserting claims under the FCA and common law. Upon motion by the Government and Cosens, the United States Judicial Panel on Multi-district Litigation assigned the cases to the District of Connecticut for coordinated or consolidated pretrial proceedings.

The Hospitals moved to dismiss the Government's claims pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the Government's complaints (i) failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), (ii) failed to state a claim, and (iii) were untimely. The district court dismissed the Government's non-fraud and common-law claims as time-barred, a ruling that the Government has not appealed.

The district court refused, however, to dismiss the FCA claims. The court determined that (i) the Government's complaints satisfied the requirements of Rule 9(b), (ii) the Government's complaints stated claims under the FCA, and (iii) the Government's FCA claims were timely on the ground that the controlling date for statute-of-limitations purposes was the date of the original *qui tam* complaint, and all claims had accrued within the applicable limitations period of that original complaint. The district court also ruled that the claims should not be dismissed for failure to prosecute and that the decisions

of the Western District of Washington granting extensions of the intervention period were entitled to respect under the law-of-the-case doctrine.

The Hospitals moved for interlocutory appeal of the district court order, arguing that (i) the Government's complaints do not allege a legally false claim under the FCA and (ii) the Government's FCA claims are time-barred. The district court certified the order, and we granted the motion.

## II

We review *de novo* the district court's denial of a motion to dismiss under Fed. R.Civ.P. 12(b). *See Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). A motion to dismiss should not be granted unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (internal quotation marks omitted). We "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.*

### A. Timeliness of Government's Complaints–in–Intervention

The Hospitals allege that the Government's remaining claims are time-barred. We agree. The FCA supplies its own statute of limitations, as follows:

**(b)** A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of [the FCA] is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the

United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b). The earliest violations alleged in this case date from 1986, and the Government filed its complaints-in-intervention in 2002–2003.[5]

■ We conclude that the date the Government's actions commenced (for statute of limitations purposes) was the date on which the complaints-in-intervention were filed, and that the Government's claims are therefore time-barred. The Government's complaints-in-intervention allege that the Hospitals made their last false claims in 1995. So, the six-year statute of limitations in 31 U.S.C. § 3731(b)(1) had expired for all claims by 2002, when the complaints-in-intervention were filed. Nor could the three-year tolling provision of § 3731(b)(2) save the claims: If the allegations in Cosens's original complaint sufficiently pled "facts material to the right[s] of action"—i.e., so that the Government should reasonably have had knowledge of such facts (a premise unchallenged by the parties)—the three-year toll under § 3731(b)(2) (even if applicable) expired in 1997.

All the claims therefore succumb to the statute of limitations, unless the Government's filing relates back to the filling of Cosens's complaint under Fed.R.Civ.P. 15(c)(2). We conclude that Rule 15(c)(2) does not permit relation back to a relator's

qui tam complaint, which is filed under seal.

## B. Application of the Relation–Back Doctrine

■ The Government argues that its claims are not time-barred because they relate back to the original complaint pursuant to Fed.R.Civ.P. 15(c)(2), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." See also 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1497 (2d ed. 2006) ("[A]mendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c).").

The district court determined that the date on which the relator files the qui tam complaint constitutes the relevant date for determining the timeliness of the government's subsequent complaint-in-intervention if the government's complaint-in-intervention satisfies the requirements governing relation back under Rule 15(c)(2). See Cardiac Devices Qui Tam Litig., 221 F.R.D. at 357 ("Rule 15(c)(2) may apply to a complaint-in-intervention filed by the United States in a qui tam proceeding, even though it is not technically an amended complaint by the original party."); accord United States ex rel. Purcell v. MWI Corp., 254 F.Supp.2d 69, 75 (D.D.C.2003); cf. United States ex rel.

---

**5.** The Hospitals argue that some of the Government's claims are time-barred because prior to the FCA's statute of limitations expired prior to Cosens's filing of his complaint in 1994. This argument reads the tolling provision in § 3731(b)(2) as inapplicable to claims alleged by a relator in a qui tam complaint, even if

the government ultimately intervenes in the action. Because we conclude that the Government filed its complaints-in-intervention outside of the statute-of-limitations period provided for by 31 U.S.C. § 3731(b), we need not address this question.

*Vosika v. Starkey Labs.*, 2004 WL 2065127, *3 (D.Minn. Sept.8, 2004); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 1998 WL 230979, at *3 (N.D.Cal. Mar.20, 1998); *United States v. Templeton*, 199 F.Supp. 179, 184 (D.Tenn.1961). We disagree, and hold that—in light of the scheme created by 31 U.S.C. § 3730(b)—Rule 15(c)(2) does not allow complaints-in-intervention filed by the government to relate back to a relator's *qui tam* complaint.

Section 3730(b), which authorizes relators to pursue actions on a *qui tam* basis "in the name of the Government," is distinctive for the secrecy that it affords the relator's qui tam complaint. 31 U.S.C. § 3730(b)(1).[6] The qui tam complaint must be filed in camera and must remain under seal for at least sixty days, *see id.* § 3730(b)(2), unless the government decides to intervene, *see* S.Rep. No. 99–345, at *24 (1986) ("Nothing in the statute … precludes the Government from intervening before the sixty-day period expires, at which time the court would unseal the complaint and have it served upon the defendant pursuant to [Fed.R.Civ.P. 4].").

The government may conduct discovery during the seal period (*i.e.*, require the production of documents, answering of interrogatories, and giving of oral testimony). *See* 31 U.S.C. § 3733. After the sixty-day seal period expires, the government has various options, of which three are relevant here; the government may:

[i] seek an extension of the seal period; such an extension, if granted, also extends the time during which the government may decide whether or not to intervene, *see id.* §§ 3730(b)(3), (4);

[ii] "elect to intervene" and "proceed with the action," "in which case the action shall be conducted by the Government," *id.* §§ 3730(b)(2), (4)(A); or

[iii] "notify the court that it declines to take over the action," in which case the relator has the "right to conduct the action," *id.* § 3730(b)(4)(B).[7]

If the government decides to intervene, the intervention will almost always involve an amended complaint. *See* 1 John T. Boese, Civil False Claims and Qui Tam Actions § 4.05[B], at 4–173 (3d ed.2006).

**6.** 31 U.S.C. § 3730(b) provides in pertinent part:

> **(b) Actions by private persons.**—(1) A person may bring a civil action for a violation of [the FCA] for the person and for the United States Government. The action shall be brought in the name of the Government....
>
> (2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

> (3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2)....
>
> (4) Before the expiration of the 60–day period or any extensions obtained under paragraph (3), the Government shall—
>
> (A) proceed with the action, in which case the action shall be conducted by the Government; or
>
> (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

**7.** Even if the government notifies the court that it declines to take over the action, it may still "intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3).

The secrecy required by § 3730(b) is incompatible with Rule 15(c)(2), because (as is well-settled) the touchstone for relation back pursuant to Rule 15(c)(2) is notice, *i.e.*, whether the original pleading gave a party "adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense," Wright et al., *supra*, § 1497; *see also Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir.1998) ("The pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims.") *overruled on other grounds by Salyton v. American Exp. Co.*, 460 F.3d 215 (2d Cir.2006); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir.1999) ("Under [Rule] 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'" (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.1973))). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). By design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint.[8] Because any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule 15(c)(2), continued running of the statute of limitations is warranted.

However, Fed.R.Civ.P. 15(c)(1) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . relation back is permitted by the law that provides the statute of limitations applicable to the action." There is a colorable argument that the FCA implicitly "permit[s]" a form of relation back that dispenses with the requirement of notice.[9] But the parties do not argue that the FCA's statute-of-limitations provision, 31 U.S.C. § 3731(b), creates its own relation-back doctrine. Of course, we have discretion to consider this question *sua sponte*. In light of our holding that the seal provision of the FCA deprives the defendant of notice, which is the touchstone of Rule 15(c)(2) relation-back, we exercise our discretion not to do so. Even if we were to consider it, moreover, we would be faced with the substantial question of whether the relator's *qui tam* complaint, as drafted and filed, could serve as a sufficient placeholder to achieve relation back in the *qui tam* context.[10]

**8.** Between 1994 and the Government's filing of its complaints-in-intervention, some of the hospitals in this case received partial (and largely informal) notice of the existence and substance of Cosens's *qui tam* complaint.

**9.** *Cf., e.g., United States ex rel. Downy v. Corning, Inc.*, 118 F.Supp.2d 1160, 1171 (D.N.M. 2000) ("Critical examination of Defendants' argument [that 'whatever limitations period applies should be calculated backward from the date of unsealing, rather than the date Relator filed her action'] leads to the conclusion that it is contrary to the language, structure, and purposes of the FCA."); *United States ex rel. Goodstein v. McLaren Reg'l Med.*

*Ctr.*, No. 97–cv–72992, 2001 U.S. Dist. LEXIS 2917, at *12 (E.D.Mich. Jan. 1, 2001).

**10.** The Eighth Circuit has held that a complaint that is egregiously defective does not commence an action for statute-of-limitations purposes. *See Biby v. Kansas City Life Ins. Co.*, 629 F.2d 1289, 1294 (8th Cir.1980). The proper standard for evaluating the sufficiency of a relator's complaint must be derived from the FCA itself, its structure and purposes. *See Campbell v. Redding Med. Ctr.*, 421 F.3d 817 (9th Cir.2005).

As described in text, the FCA allows a relator to keep a claim under seal for sixty days to

* * *

The judgment of the district court is reversed in part, and the case is remanded to the district court with instructions to dismiss the Government's remaining claims.

allow the government to determine whether or not to intervene. 31 U.S.C. § 3730(b). In the "vast majority" of cases, sixty days will be sufficient for the government to make this determination, S.Rep. No. 99–345, at *24–25 (1986); however, on "good cause" shown *ex parte*, the government may obtain extensions. 31 U.S.C. § 3730(b)(3). No limit is set to the number or length of such extensions. *Boese, supra*, § 4.04[B][2], at 4–165.

If grossly insufficient complaints are deemed sufficient to support relation-back for a complaint-in-intervention filed by the government, and if the government's "good cause" for delay is its need to get done what would have been done if the relator's complaint had been minimally sufficient, the FCA's statute of limitations may fail to serve its purpose. This case illustrates that risk:

The original and amended complaints joined the 132 defendant hospitals in a single complaint that alleged a single, omnibus cause of action encompassing tens of thousands of alleged FCA violations; no allegation was made that the hospitals collaborated or conspired; no particular fraudulent transactions were ascribed to any of the 132 individual hospitals; of those hospitals, just two were located in the Western District of Washington, where the complaints were filed.

Thus, even assuming *arguendo* that (pursuant to Fed.R.Civ.P. 15(c)(1)), 31 U.S.C. § 3731(b) creates its own relation-back doctrine, it is not at all clear that Cosens's *qui tam* complaint would be sufficient to commence the action for statute-of-limitations purposes.